IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOIS ROGERS-WRIGHT, | : |
| Plaintiff, | : |
| v. | : CIVIL ACTION No. 02-3350 |
| NEW HANOVER AVIS RENT-A-CAR, INC., and AVIS RENT-A-CAR SYSTEM, | : |
| Defendants. | : |

**DEFENDANT NEW HANOVER RENT-A-CAR, INC.'S
REPLY BRIEF IN SUPPORT OF ITS
<u>MOTION FOR JUDGMENT ON THE PLEADINGS</u>**

Defendant New Hanover Rent-A-Car, Inc. ("New Hanover"), by and through its undersigned counsel, respectfully submits this reply brief in further support of its Motion for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) ("Motion").

**<u>INTRODUCTION</u>**

New Hanover's Motion raised three arguments mandating the dismissal of plaintiff's claims against it. First, New Hanover argued that plaintiff's claims under 42 U.S.C. § 1981 were barred by Pennsylvania's two-year statute of limitations. Second, New Hanover pointed out that plaintiff's attempt to invoke the protection of N.C.G.S. § 75B, the North Carolina anti-discrimination statute, is inapposite because that statute only applies to claims brought by North Carolinians, and plaintiff is a Pennsylvania resident. Finally, New Hanover provided the Court with a full copy of the *Pugh* Consent Decree referenced in, but not attached to, the Complaint, and which shows on its face that all of plaintiff's claims are barred by the release provisions of that class action settlement.

Plaintiff's response brief concedes that New Hanover's argument that the Pennsylvania statute of limitations precludes her claim is "generally true," and that New Hanover has "admittedly [made] a correct reading" of N.C.G.S. § 75B.  Despite these admissions, plaintiff still attempts to avoid dismissal by seeking the benefit of admittedly "narrow" and "closely circumscribed" exceptions to the statute of limitations, and by asserting a constitutional objection to the limited range of N.C.G.S. § 75B that, if accepted, would result in a far more serious and fundamental violation of the Constitution than that on which plaintiff's argument relies.  Finally, in an attempt to avoid dismissal under the terms of the Consent Decree, plaintiff has submitted new and unverified documents outside the scope of the pleadings in support of a surprising new assertion of fact -- that is, that plaintiff's claims are not barred by release contained in the Consent Decree because she was never a part of the class of claimants.  Contrary to the assertions of her Complaint, plaintiff now argues that she never had or attempted to have any contractual relationship with New Hanover whatsoever.  This assertion, if accepted, destroys the factual underpinnings of plaintiff's claim for relief under § 1981.

As will be shown below, plaintiff's attempt to avoid the admittedly well-founded arguments raised in New Hanover's Motion are without merit, while her attempt to inject new facts into the case via her response brief is not only procedurally improper, but also gives rise to yet another compelling basis to dismiss her suit.  Accordingly, plaintiff's claims against New Hanover should be dismissed in their entirety.

## ARGUMENT

**A.    Plaintiff's Improper Attempt to Inject New Facts Into the Case in Support of Her § 1981 Claim Only Gives Rise to New Grounds Upon Which to Dismiss That Claim**

Plaintiff attempts to avoid the preclusive effect of the *Pugh* Consent Decree by submitting unverified, collateral documents that are not referenced in the Complaint. These new materials and factual allegations, if accepted, show that plaintiff never had or attempted to have any contractual relationship with New Hanover. This new evidence does not advance plaintiff's case, but rather gives rise to a fresh and compelling basis upon which to dismiss plaintiff's claim under 42 U.S.C. § 1981.

The Consent Decree defines the class of claimants in the *Pugh* action as:

> every African-American who, between June 1, 1988 and the effective date of this Consent Decree [September 16, 1998], has *attempted to contract, or has contracted,* with New Hanover's Avis franchises in Wilmington, North Carolina; Jacksonville, North Carolina; Greenville, North Carolina; New Bern, North Carolina; Kinston, North Carolina; or Florence, South Carolina for rental vehicles and who, as alleged in the Second Amended Complaint, was subjected to racially discriminatory practices or provided services in a discriminatory manner, on the basis of race or color.

Motion, Exhibit "B" at 8; Exhibit "C" at 2-3 (emphasis added). In her Complaint, plaintiff alleged that she and another party, Mrs. Betty Frisby, attempted to rent an automobile from New Hanover, but were initially denied the right to do so. *See* Plaintiff's Complaint, at ¶ 10. New Hanover's Motion thus argued that plaintiff's suit was barred by the release provisions of the Consent Decree, which waives all further claims by class members. In response, plaintiff has submitted several unverified documents, entirely new to the case, which contradict her own pleadings by claiming, for the first time, that she never contracted or attempted to contract with New Hanover.

3

As an initial matter, the Court should reject plaintiff's attempt to submit new documents and assert new facts in response to a motion for judgment on the pleadings. *See, e.g., Churchill v. Star Enterprises,* 3 F.Supp.2d 625, 627 (E.D.Pa. 1998) (in considering a motion for judgment on the pleadings, the Court is limited to the pleadings and those documents "integral to or explicitly relied upon" in the pleadings), *aff'd*, 183 F.3d 184 (3d Cir. 1999). Under this rule, it was proper for New Hanover to provide the Court with copies of pleadings from the *Pugh* case that plaintiff mentioned in her Complaint, but failed to attach thereto. However, it is not proper for plaintiff to submit extraneous documents such as Ms. Frisby's rental agreement with defendant Avis and correspondence from the *Pugh* claims administrator. Thus, the Court is free to ignore or reject these documents.

However, even if the Court accepts these new documents and the facts that plaintiff argues from them, then plaintiff's attempt to assert a claim under § 1981 is doomed for a different, but equally powerful reason. As a person who has neither contracted nor attempted to contract with New Hanover, plaintiff has no standing under § 1981, and her Complaint as now recast fails to state a claim under that statute for which relief can be granted.

Section 1981 states that all individuals shall have "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The Civil Rights Act of 1991 amended the language of § 1981 to encompass the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b). However broadened by the 1991 amendments, § 1981 still clearly requires a plaintiff to demonstrate some contractual basis for a claim. *See Lewis v. J.C. Penney Co., Inc.*, 948 F. Supp. 367, 371 (D. Del. 1996) (court dismissed plaintiff's § 1981 claim because no contractual relationship existed between plaintiff and the

defendant retail outlet); *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996) (summary judgment for defendant when plaintiffs were not deprived of any enumerated right under § 1981, and, specifically, the right to make and enforce a contract). *See also Bolden v. Archdiocese of Philadelphia*, Civ. A. No. 94-3899, 1995 WL 46694 (E.D.Pa. Feb. 1, 1995) (§ 1981 concerns the making and enforcement of contracts, such that a *prima facie* case under § 1981 requires the plaintiff to demonstrate some contractual relationship with the defendant), *reconsid. denied*, 1995 WL 66717 (E.D. Pa. Feb. 15, 1995).

Thus, to state a claim under § 1981, a plaintiff must allege the following elements: 1) that the plaintiff is member of a racial minority; 2) that the defendant intended to discriminate against the plaintiff on the basis of race; and 3) that the discrimination <u>concerns one or more of activities enumerated in the statute, such as the making and enforcement of contracts, or the right to sue and be sued, give evidence, or the like</u>. *See Brown v. Philip Morris*, 250 F.3d 789, 797 (3d Cir. 2001) (holding that plaintiffs did "not allege a claim cognizable under either § 1981 or § 1982" where they failed to allege "that they have been deprived by defendants of the right to contract for, purchase, own or use . . . cigarettes"); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994) (plaintiff's claim dismissed pursuant to Rule 12(b)(6) where plaintiff "failed to allege facts . . . that place[d] him in the ambit of protection under § 1981" by asserting, *inter alia*, an actual or prospective contract with the defendant).

As these citations indicate, plaintiff must show that New Hanover's actions affected an activity protected by § 1981 in order to state a claim under that statute -- here, the making or enforcement of a contract.[1] Like the plaintiffs in *Brown, supra*, plaintiff here has not been

---

[1] Covered actions under § 1981 are: (1) the making and enforcement of contracts, (2) the ability to sue, be party to a lawsuit and give evidence, (3) the full and equal benefit of all laws and proceedings for the security of persons and property, and (4) liability for punishment, pains, penalties, taxes, licenses and

deprived of her right to make or enforce a contract, because she now affirmatively asserts that she never attempted to make any contract with New Hanover. *See Brown*, 250 F.3d at 797. *See also Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 81 (C.D. Ill. 1992) (court dismissed claim when "plaintiff was not denied admittance or service"), *reconsid. denied*, 155 F.R.D. 580 (E.D. La. 1994). Because plaintiff's own assertions have negated an essential element of her § 1981 claim, that claim must be dismissed. *See Jordan v. SmithKline Beecham, Inc.*, 958 F. Supp. 1012, 1024 (E.D. Pa. 1997) (Buckwalter, J.) (dismissing § 1981 claim and holding it meritless where plaintiff failed to allege discrimination prohibited by § 1981), *aff'd*, 142 F.3d 428 (3d Cir. 1998), *cert. denied*, 425 U.S. 871 (1999).

In sum, plaintiff's attempt to escape the frying pan of the Consent Decree, even if accepted at full face value, only serves to transfer her claims to the fire of basic § 1981 jurisprudence. Plaintiff cannot have it both ways. If she attempted to contract with New Hanover, as indicated by her Complaint, then her claim is barred by the *Pugh* Consent Decree and Final Judgment because she is a member of the *Pugh* class. If she did not attempt to contract with New Hanover, as she now asserts, then her claim does not come under the purview of § 1981 because there has been no interference with any cognizable contractual rights. Accordingly, plaintiff's § 1981 claim must be dismissed.

### B.    The Pennsylvania Statute Of Limitations Applies To Plaintiff's § 1981 Claim

Plaintiff admits that the applicable statute of limitations for a § 1981 claim in Pennsylvania is two years. Plaintiff further admits that it is "generally true" that federal courts reviewing § 1981 actions apply the statute of limitations of the state in which they sit, and that this is "uniformly the case where the district court exercises diversity jurisdiction."

---

exactions. *See Lewis*, 948 F. Supp. at 371. There is no indication in the pleadings that plaintiff alleges interference with any right other than the right to make and enforce contracts.

6

However, plaintiff argues that this Court is not strictly bound by the Pennsylvania statute of limitations in determining whether her claims are time-barred because: 1) the Court is not exercising diversity jurisdiction; 2) the § 1981 action would have been timely if she had filed her claims in North or South Carolina; and 3) that the Court should rely on its "common sense" to disregard this clear limitations rule. None of these arguments bears scrutiny.

First, Plaintiff's assertion that, "nothing contained in the Praecipe, Writ of Summons, Complaint, or any other relevant filing established jurisdiction based on diversity of citizenship and jurisdictional amount," and that "the only basis for removal [in this case] is federal question jurisdiction" is simply incorrect. As set forth at length in both the Complaint and New Hanover's Notice of Removal, there is ample basis for diversity jurisdiction: plaintiff is a Pennsylvania resident, Avis is a Delaware corporation, and New Hanover is a North Carolina corporation. *See* Complaint, caption (giving plaintiff's residence address as Philadelphia) and ¶¶ 2, 3. Thus, in removing the action, New Hanover invoked both this Court's federal question jurisdiction *and* diversity jurisdiction. *See* Notice of Removal, ¶ 5. Because this Court is sitting in diversity jurisdiction, and because plaintiff has conceded that it is "uniformly the case" that federal courts exercising such jurisdiction apply the statute of limitations of the state in which they sit, Pennsylvania's two-year statute of limitations applies to, and bars, plaintiff's § 1981 claim.

Thus, in *Tiggett v. New Jersey National Guard*, Civ. A. No. 90-2265, 1990 WL 181474 (E.D. Pa. Nov. 20, 1990), this Court held that under *Goodman v. Lukens Steel Co.*, 482 U.S. 656 (1987), and subsequent Third Circuit precedent, the district courts must apply the statute of limitations of the forum state. *Id.* Accordingly, the *Tigget* Court applied Pennsylvania's two-

year statute of limitations to the plaintiff's § 1981 claim.  *Id.*² *See Vinson v. Seven Seventeenth HB Philadelphia Corp.*, No. Civ. A. 00-6334, 2001 WL 1774073, at *11 (E.D. Pa. Oct. 31, 2001) ("section 1981 does not provide a limitations period and, therefore, federal courts apply the most appropriate or analogous state statute *in the state in which the suit is filed*") (citing *Goodman*, 482 U.S. at 660) (emphasis added).

     Plaintiff's second argument for avoiding the two-year statute of limitations is even less persuasive than her first.  Plaintiff asserts that her claim should be exempted from the requirements applied to all other such claims filed in Pennsylvania because it *would have* been timely *if* it were filed in North or South Carolina.  This argument ignores the obvious fact that this claim *was not* filed in North or South Carolina, but, at plaintiff's discretion, was filed in Pennsylvania.  Plaintiff offers no authority for the proposition that, if a § 1981 claim would be considered timely filed anywhere, it must be accepted as timely filed everywhere, regardless of the statute of limitations applied by the forum state.  Neither of the two cases cited in support of her second argument, *Oshiver v. Levin, et al.*, 38 F.3d 1380, 1387 (3rd Cir. 1994) or *Lake v. Arnold,* 232 F.3d 360, 370 n.9 (3rd. Cir. 2000), applied the equitable tolling doctrine to save a complaint from dismissal "where the plaintiff asserts here claims in a timely manner but has *mistakenly* done so in the wrong forum."  *Oshiver*, 38 F.3d at 1387 (emphasis added).

     In any case, plaintiff cannot argue here that she "mistakenly" filed her Complaint in the "wrong forum," because she has never admitted to any such "mistake" nor taken any steps to correct it, and because the procedural history of this case belies any such hasty or ill-considered decision as to the proper forum.  Plaintiff waited three years after the alleged discrimination to file a writ of summons against New Hanover in the Philadelphia Court of Common Pleas.  *See*

---

²     The Court held that the plaintiff's claim was brought in the applicable time period, and did not dismiss the claim.  *Id.*

Notice of Removal, Exhibit B. This writ languished undisturbed for almost a year until, just before the date set for trial, plaintiff finally filed her Complaint. *Id.,* Exhibit A. After having had almost four years after the underlying events in which to determine the proper forum in which to file her Complaint, plaintiff chose Pennsylvania. Plaintiff cannot credibly argue that this choice was a mistake. Further to this point, it is significant to note that plaintiff does not seek a transfer to any supposedly proper venue, even after arguing that she has "mistakenly" filed her claim in the "wrong forum."

Plaintiff's last and least convincing limitations argument is that the Court should apply some ill-defined but admittedly narrow and closely circumscribed "common sense" exception to the statute of limitations, which is allegedly available to save claims under a federal statute where "common sense" dictates that Congress would not wish the limitation to apply. Here, Congress refrained from specifying a general statute of limitations for § 1981 claims, either in the original legislation or its 1991 amendments. Instead, Congress left it to the federal district courts to apply the limitations period of the forum state. This necessarily results in the application of varying statutes of limitations to the same cause of action, depending upon the state in which it was filed. "Common sense" dictates that Congress, by enacting this system and allowing it to continue despite having had the opportunity to change it, would not wish this Court to do anything but follow and enforce that system.[3]

---

[3] Further, plaintiff's argument that this Court may set aside Pennsylvania's two-year statute of limitations because of "common sense" misinterprets the holding in *North Star Steel Co. v. Thomas*, 515 U.S. 9 (1995). *North Star* simply holds that when the most analogous state statute of limitations period would "frustrate or interfere with the implementation of national policies", the court may look to another period from that state or federal law "more in harmony" with the objectives of national policy. *Id.* at 14. *North Star* does not stand for the proposition that a court may haphazardly select another's state statute of limitations to shelter an untimely claim in the interests of justice. Plaintiff's broad reading of *North Star* would disturb the Court's "closely circumscribed . . . [and] narrow exception." *Id.*

Pennsylvania's two-year statute of limitations applies in this Court and to this case. Accordingly, plaintiff's § 1981 claim is barred by Pennsylvania's two-year statute of limitations, and must be dismissed with prejudice.

> C.  **The Limited Reach of N.C.G.S. § 75B is Dictated By Well-Established Principles of Comity**

Plaintiff's final and most inventive argument seeks to invalidate, on constitutional grounds, the same statute on which she relies for relief. Plaintiff concedes that the protections of N.C.G.S. § 75B extend only to citizens of North Carolina, and thus are unavailable to plaintiff. Plaintiff argues, however, that this "literal" (i.e., verbatim) interpretation of N.C.G.S. § 75B violates the Privileges and Immunities and Equal Protection clauses of the Constitution.

Little need be said in response to this argument other than that it runs directly afoul of more than 120 years of fundamental constitutional jurisprudence holding that basic principles of comity and federalism preclude any state from imposing its laws beyond its jurisdictional boundaries. *See Bonaparte v. Tax Court*, 104 U.S. 592, 594 (1881) ("No State can legislate except with reference to its own jurisdiction. . . . Each State is independent of all others in this particular."); *Huntington v. Attrill*, 146 U.S. 657, 669 (1892) ("Laws have no force of themselves beyond the jurisdiction of the state which enacts them, and can have extraterritorial effect only by the comity of other states."); *New York Life Ins. Co. v. Head*, 234 U.S. 149, 161 (1914) ("[I]t would be impossible to permit the statutes of Missouri to operate beyond the jurisdiction of that state . . . without throwing down the constitutional barriers by which all the states are restricted within the orbits of their lawful authority, and upon the preservation of which the government under the Constitution depends. This is so obviously the necessary result of the Constitution that it has rarely been called in question, and hence authorities dealing directly with it do not abound."); *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975) ("A State does not acquire power or

supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected when they travel to that State."); *BMW of North America v. Gore*, 517 U.S. 559, 571 (1996) (rejecting attempt to impose Alabama consumer disclosure law to conduct occurring in other states or to citizens of other states; holding that "while we do not doubt that Congress has ample authority to enact such a policy for the entire Nation, it is clear that no single State could do so, or even impose its own policy choice on neighboring States") (citing *Bonaparte, Huntington, New York Life,* and *Bigelow*) (footnote omitted).

Plaintiff is a Pennsylvania resident. All of the discriminatory conduct that she claims to have suffered at the hands of New Hanover occurred in Florence, South Carolina. Complaint, ¶¶ 9-11. To allow a Pennsylvania resident, claiming injury from conduct occurring in South Carolina, to invoke the protection of a North Carolina statute in federal court sitting in Pennsylvania, is a result almost too ludicrous to imagine.[4] Thus, N.C.G.S. § 75B's limited application to North Carolina citizens not only passes constitutional muster, but is also *mandated* by basic constitutional principles of comity.

## CONCLUSION

For the reasons set forth above and in its Motion, New Hanover respectfully submits that plaintiff's claim is barred as a matter of law on clear and multiple grounds, and that plaintiff's response brief has served only to confirm and to add to those grounds for dismissal. New Hanover therefore respectfully requests that the Court grant its Motion for Judgment on the

---

[4] Indeed, in footnote 3 of her Response, plaintiff admits that only two state statutes have ever been declared unconstitutional pursuant to the privileges and immunities clause. *See* Plaintiff's Response, at 6 n.3.

11

Pleadings and dismiss Counts I and II of plaintiff's Complaint.

                                                                                                  Respectfully submitted,

Dated: July 2, 2002                                                                                       _____

Craig D. Mills
Brian J. McCormick, Jr.
**BUCHANAN INGERSOLL, P.C.**
Eleven Penn Center, 14th Floor
1835 Market Street
Philadelphia, PA 19103-2985
Telephone: (215) 665-8700

Attorneys for Defendant New Hanover Rent-A-Car, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing Reply Brief in Support of Motion for Judgment on the Pleadings has this 2nd day of July, 2002, been transmitted by U.S. First Class Mail to the following attorneys of record for the parties:

Jack M. Bernard, Esquire
2121 Land Title Building
100 South Broad Street
Philadelphia, PA 19110

Bridget E. Montgomery, Esquire
Eckert Seamans Cherin & Mellott, LLC
213 Market Street, Floor 8
Harrisburg, PA 17101

_____
Brian J. McCormick, Jr.